## PHYLIS A. CLIFFORD'S CASE.

Suffolk. February 4, 1958. — March 5, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, & CUTTER, JJ.

*Workmen's Compensation Act,* Filing of claim, Injuries to which act applies.
  *Proximate Cause.*

A conclusion was warranted in a workmen's compensation case that the
  insurer was not prejudiced by late filing of the claim for compensation
  where it appeared that the insurer had notice of injury to the employee
  from a fall at the time it occurred, that the employee was not incapaci-
  tated by the injury until three years thereafter, although she had
  intermittent pain and trouble with her back in the interim, that she
  had no medical attention in the interim but secured competent medical
  care promptly upon becoming incapacitated and was available for
  physical examination by the insurer, and that she and the orthopedic
  surgeon who treated her testified in the proceeding before the Indus-
  trial Accident Board, notwithstanding that the claim was not filed
  until some five months after the beginning of the incapacity. [130–132]
Evidence in a workmen's compensation case warranted a finding by the
  Industrial Accident Board that an injury sustained by the employee
  in a fall was the cause of her incapacity from back trouble beginning
  three years later. [132–133]

CERTIFICATION to the Superior Court of a decision by the
Industrial Accident Board under the workmen's compen-
sation act.

The case was heard by *Goldberg,* J.

*Eugene C. McCabe,* for the insurer.

*Anthony N. Tomasiello,* for the claimant.

CUTTER, J. In 1952, the employee fell downstairs while
going out for a coffee period. She reported the incident to
her supervisor but lost no time from work. She was badly
bruised and had discoloration for about four weeks. She
had no medical attention until September, 1955, but, in
the interim, had intermittent pain and trouble with her
back, which became so bad that she stopped work in Septem-
ber, 1955, on the advice of a doctor to whom she was then

referred.  Her duties as a file clerk required a great deal of bending and stooping.  In October, 1955, she was admitted to a hospital where a fusion was performed on her back. She was discharged from the hospital in November, 1955, and has continued to have pains in her back.

The single member found these facts and (a) that the employee's injury in 1952 arose "out of and in the course of her employment . . . and was the cause of her disability on September 20, 1955, and thereafter," and (b) that the employer had knowledge of the injury "and was not prejudiced by any failure . . . of the employee to conform to the statutory requirements."  He awarded compensation.

The reviewing board adopted the single member's findings but amplified them by finding that the employer filed, on October 10, 1955, a first report of injury dated September 28, 1955, that the employee had prompt and adequate medical treatment when her incapacity began in September, 1955, and "that the insurer was not prejudiced because the employee failed to file her claim for compensation until February 13, 1956."  In the Superior Court a decree was entered enforcing the order of the board.  The insurer appealed.

1. The insurer concedes that it had notice of the injury in 1952, but contends that it was prejudiced by the employee's failure to file a claim until February 13, 1956, on the grounds that this failure (a) destroyed the right of the insurer to a medical examination, G. L. (Ter. Ed.) c. 152, § 45,[1] and to furnish medical treatment (§30[2]), and (b) deprived it of opportunity to investigate the circumstances seasonably. Section 41 provides in part, "No proceedings for compensation . . . shall be maintained . . . unless the claim for compensation with respect to such injury has been made within six months after its occurrence."  Section 49[3] provides in part, "Failure to make a claim within the time

---

[1] Amended in respects not here pertinent by St. 1951, c. 662, and St. 1955, c. 174, § 5.

[2] As appearing in St. 1946, c. 233, § 1, and as amended by St. 1948, c. 159; later amended in respects not here pertinent by St. 1953, c. 314, § 6.

[3] Amended in respects not here pertinent by St. 1953, c. 314, § 6.

fixed by section forty-one shall not bar proceedings under this chapter if it is found that it was occasioned by mistake or other reasonable cause, or if it is found that the insurer was not prejudiced by the delay."

Obviously the protection afforded to the insurer by these statutory provisions for prompt notice and filing of claim should not be taken from the insurer lightly by any perfunctory finding that the insurer has not been prejudiced. The "burden of proving lack of prejudice with respect to . . . the delay in presenting the claim was on the claimant" and "the claimant's burden is not sustained by surmise or conjecture." Like all other findings which by c. 152 the board is called upon to make, there must be in the evidence sufficient "basis for a finding of want of prejudice." *Russell's Case*, 334 Mass. 680, 682–684. The long delay in filing claim even after the employee's discovery in September, 1955, that she had suffered disability calls for special scrutiny of the board's finding.

We see no prejudice to the insurer through any deprivation of opportunity to investigate the circumstances of the injury, for it concedes that it had notice of the incident. A closer question is presented of possible prejudice in failure to have prompt filing of claim in September, 1955, after the employee knew that some disability had set in, where it can be argued that contact thereafter by the insurer with the medical aspects of the case might have been of significance. Doubtless, the fact that for thirteen weeks she then received accident and health benefits from her employer was in part responsible for her failure to appreciate the necessity of acting more promptly. However, the employee then had medical care reasonably found by the board to have been competent. She remained available for physical examination, which the insurer did not see fit to make until nearly eight months after the filing of the claim. She was called as a witness before the single member and testified. The orthopedic surgeon who treated her testified at length and was available for cross-examination. The insurer points out no special respect in which there has been prejudice to

it through want of opportunity to participate in diagnosis, treatment and examination. We cannot say that a finding of lack of prejudice has no sufficient support in the evidence. *Tassone's Case,* 330 Mass. 545, 548. *Brown's Case,* 334 Mass. 343, 348. The situation is different from that in *Russell's Case,* 334 Mass. 680, where the injury complained of was an alleged aggravation of a heart ailment of which the self insurer had no notice until ten months after the employee's death. Compare also *Booth's Case,* 289 Mass. 322, 325 (no notice to insurer at all until seven months after injury); *Meagher's Case,* 293 Mass. 304, 308.

2. The insurer also contends that the evidence did not warrant the board in finding that the employee's disability after September 20, 1955, was causally related to the 1952 injury. Upon the evidence it could be found (a) that, although the employee had poliomyelitis at age eleven, she had no back trouble prior to the 1952 injury, and (b) that from the date of her fall "she had pain . . . she had a lump and she was very conscious of a drawing sensation right along . . . a definite pain in her buttock all the time . . . right down in the left hip and buttocks." The 1955 hospital record showed a diagnosis of "lower back pain following a fall three years ago." The doctor who treated her in 1955 said that it was his "opinion that Mrs. Clifford's low back problem was a direct outgrowth of her fall" and that "it is causally related." On cross-examination, some of his admissions unquestionably cast substantial doubt upon his opinion but not, as we read the evidence, to an extent sufficient to destroy its foundation (compare *Brown* v. *United States Fidelity & Guaranty Co.* 336 Mass. 609), reading the admissions in context. They went only to the weight of the evidence, which was for the board. A medical expert called by the insurer testified that he "would say there was a connection," assuming (1) that the employee fell in 1952, (2) that she had encountered no trouble with her back prior to the fall, and (3) that after the fall she had intermittent back pain. We cannot say that no "rational view of the evidence" (see *Wnukowski's Case,* 296 Mass. 63, 64) war-

ranted the board in finding that the employee's disability was caused by the 1952 injury.

The decree is affirmed. Costs of the appeal are to be determined by the single justice under G. L. (Ter. Ed.) c. 152, § 11A, inserted by St. 1945, c. 444, as amended by St. 1949, c. 372.

*So ordered.*